# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| CHRISTOPHER C. SPENCER <br> *Plaintiff,* | CIVIL NO. 3:08CV00591 |
| v. | MEMORANDUM OPINION |
| AMERICAN INTERNATIONAL GROUP, INC., *et al.* <br> *Defendants.* | JUDGE NORMAN K. MOON |

On September 10, 2008, Christopher Spencer ("Plaintiff") filed this case against

Defendants American International Group, Inc. ("AIG"), AIG Domestic Claims, Inc., National

Union Fire Insurance Company of Pittsburgh, Pennsylvania, and American Home Assurance

Company (collectively, the "AIG subsidiaries"), James Maddiona ("Maddiona"), Patrick Regan

("Regan"), and Regan, Zambri & Long, PLLC (the "Regan Firm"). This case was ultimately

reassigned to the undersigned[1] on October 14, 2008 by Order of Karen Williams, Chief Judge

for the Fourth Circuit Court of Appeals. This matter is now before the Court on the Motions to

Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Regan, the Regan Firm,

AIG, the AIG Subsidiaries, and Maddiona.

---

[1] The undersigned district judge sits on the U.S. District Court for the Western District of Virginia but is sitting in the Eastern District of Virginia by special designation for the purposes of this case.

# I. Background

This case arises from the fallout that occurred between two sets of lawyers after a costly error was made in an attempted appeal of a personal injury action. In 2003, Plaintiff and his former law firm Bowman & Brooke LLP ("B&B") were retained to defend Wintergreen Partners, Inc. ("Wintergreen") and two of its employees against claims asserted by, and later on behalf of, Jessica Grigg. Grigg had been seriously injured that year at a ski resort operated by Wintergreen. Shortly before the trial began in Circuit Court for the County of Albemarle, Wintergreen's insurance carriers (Defendants National Union and American Home) retained appellate attorney Duncan Getchell and his law firm McGuireWoods for the purposes of an appeal in the event that there might be an adverse verdict. On July 16, 2004, after a week-long trial, a jury returned a verdict against Wintergreen in the amount of $8.3 million. Final judgment was entered against Wintergreen on September 30, 2004.

Plaintiff claims that he, Getchell, McGuireWoods, Wintergreen, and Wintergreen's insurance carriers all agreed that Getchell and McGuireWoods would handle all of the post-trial matters in the case, including Wintergreen's appeal of the trial court judgment. On October 28, 2004, Getchell and McGuireWoods filed a notice of appeal on behalf of Wintergreen pursuant to Rule 5:9 of the Rules of the Supreme Court of Virginia. Plaintiff was also listed as counsel for Wintergreen on the notice of appeal. While the Rule 5:9 notice certified that all the required trial transcripts had been filed for the case, at least one trial transcript was apparently not timely filed on Wintergreen's behalf. For that reason, the Virginia Supreme Court ultimately dismissed the *Grigg* appeal in July 2005.

Plaintiff alleges that shortly after the *Grigg* appeal was dismissed, AIG[2] sent him and Getchell a letter that informed them that Wintergreen's insurance carriers would be bringing malpractice claims against both of them regarding the dismissal of the appeal. According to Plaintiff, attorneys at McGuireWoods and others then began to take steps to lay the blame on him and deflect blame from the firm for the dismissal of the appeal in order to preserve the reputation of the firm and protect Getchell's prospects of securing a nomination to the Fourth Circuit Court of Appeals. Plaintiff claims that John Barr, general counsel for McGuireWoods, met with Maddiona,[3] a senior officer of Wintergreen's insurance carriers and related companies, to persuade Maddiona that AIG lacked a viable malpractice claim against Getchell and McGuireWoods. Plaintiff also claims that Barr sought to persuade Maddiona and AIG to accept a goodwill payment from McGuireWoods, which had a long-standing relationship with AIG and hoped to continue to get work from the company. According to Plaintiff, Barr and Maddiona decided to postpone any claims against McGuireWoods and Getchell and have AIG file a malpractice complaint against Plaintiff in order to make it appear that the failed appeal was solely Plaintiff's fault. Plaintiff alleges that, in furtherance of this agreement, Maddiona directed AIG to hire Regan and the Regan firm to file a malpractice suit against him. The complaint

---

[2] Plaintiff frequently refers to AIG and its subsidiaries American Home, National Union, and AIG Domestic Claims together collectively as "AIG." *See, e.g.*, Compl. ¶¶ 11, 33. While there is much disagreement among the parties concerning the relationship between AIG and its subsidiaries as well as Plaintiff's choice of lumping all of the companies together as "AIG," the Court finds it unnecessary to resolve the dispute at this stage because the Motions can be disposed of on other grounds.

[3] Plaintiff claims that Maddiona was "a senior officer of Wintergreen's insurers and related companies, which included American International Group, Inc., AIG Domestic Claims, Inc., National Union Fire Insurance Company of Pittsburgh, PA, and American Home Assurance Company (collectively 'AIG')." Compl. ¶ 33. AIG, however, claims that Maddiona is neither an officer nor employee of AIG and is only an officer of a division of AIG Domestic Claims, Inc. Mem. in Supp. of Mot. Dismiss by AIG, at 5. *See also* Greensfelder Dec. ¶ 5; Maddiona Dec. ¶ 1. The Court cannot consider the evidence submitted by Maddiona regarding his status as an officer of AIG Domestic Claims without converting his Motion into one for summary judgment and giving Plaintiff a reasonable opportunity to present material pertinent to the Motion. *See* Fed. R. Civ. P. 12(d). The Court declines to consider the evidence at this stage, however, because it is possible to resolve the Motions to Dismiss on other grounds.

against Spencer and B&B (the "Malpractice Complaint") was eventually filed in Circuit Court for the City of Richmond on July 18, 2007.

In September 2007, Getchell was nominated by President Bush for a judgeship on the Fourth Circuit Court of Appeals. That same month, Marc Davis, a reporter for the *Virginian-Pilot* newspaper, learned that Getchell had been involved in the *Grigg* appeal. Plaintiff claims that Davis called the White House for comment as to Getchell's involvement with the dismissal of the appeal and was informed of the existence of the Malpractice Complaint against Plaintiff and B&B. After discovering that Regan filed the Malpractice Complaint, Davis contacted him for comment. Plaintiff claims that Regan made several false and defamatory statements about him during the conversation with Davis. According to Plaintiff, Regan made the statements with knowledge that they were false while acting on behalf of AIG and Maddiona, all as part of the scheme to deflect blame from McGuireWoods and Getchell for the dismissal of the *Grigg* appeal. Plaintiff claims the false and defamatory statements were incorporated into a *Virginian-Pilot* article by Davis that was published on October 9, 2007.[4] The article noted that Wintergreen's insurers were suing Plaintiff and B&B in a legal malpractice action and were not yet blaming Getchell for the error in the suit. The only statement actually attributable to Regan in the article read: "The lawyer handling that case said he may add Getchell and McGuireWoods as defendants once he learns more facts through depositions and other discovery."

In July 2008, the Malpractice Complaint was amended to name McGuireWoods as a defendant in addition to Plaintiff and B&B. According to Plaintiff, the amended Malpractice Complaint dropped some of the most inflammatory allegations against him and "dropped altogether the false pretense that Getchell and McGuireWoods were innocent." Plaintiff claims

that despite the amendment, Regan, the Regan Firm, AIG, the AIG subsidiaries, and Maddiona

continue to conspire with Getchell and McGuireWoods to lay the blame for the appeal mishap on

him. For example, Plaintiff alleges that Regan has since refused to allow Plaintiff access to

documents in McGuireWoods' *Grigg* file dated after April 19, 2005 and blocked Plaintiff's

attempts to obtain documents from AIG.

Based on the aforementioned allegations, Plaintiff asserts four separate tort claims

against all of the Defendants: (1) malicious defamation; (2) abuse of process; (3) conspiracy to

injure Plaintiff in his reputation, business, and profession in violation of Virginia Code § 18.2-

499; and (4) negligent defamation.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does

not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

*Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint

"does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65

(2007) (internal citations omitted). A court need not "accept the legal conclusions drawn from

the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments."

*Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Factual allegations must be enough to raise a right to relief above the speculative level,"

*Twombly*, 127 S. Ct. at 1965, with all allegations in the complaint taken as true and all

---

[4] Marc Davis, <u>Error in Major Case Tied to Judge Nominee</u>, Virginian-Pilot, Oct. 9, 2007.

reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d

342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics,

but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct.

at 1974. A plaintiff's complaint must therefore be plausible, not merely conceivable, in order to

avoid dismissal. *Id.*

### III. DISCUSSION

### A. DEFAMATION

Plaintiff alleges that, as part of a broader scheme to deflect blame away from Getchell

and McGuireWoods for the dismissal of the *Grigg* appeal, Regan made several sets of false and

defamatory statements, either directly or by innuendo, to Davis in a phone conversation in

September 2007. According to Plaintiff, all of the alleged statements were made by Regan while

acting as the agent of the Regan Firm, AIG, the AIG subsidiaries, and Maddiona.

First, Plaintiff alleges that Regan made several false and defamatory statements when he

provided a copy of the Malpractice Complaint to Davis and vouched for the accuracy of the

allegations contained therein. The allegedly defamatory statements that were contained in the

Malpractice Complaint are recited in Paragraph 52 of Plaintiff's Complaint.

Second, despite the fact that the only statement actually attributed to Regan in the

*Virginian-Pilot* article was that "he may add Getchell and McGuireWoods as defendants once he

learns more facts through depositions and other discovery," in Paragraph 48 of the Complaint,

Plaintiff claims that Regan falsely stated to Davis that:

> a. Getchell and McGuireWoods were not defendants because AIG did not blame
> Getchell or McGuireWoods for the dismissal of the *Grigg* appeal, and that AIG
> blamed only Spencer and B&B for that dismissal; and
>
> b. Getchell and McGuireWoods were not defendants because, at that time, he and AIG
> had insufficient information to support a claim that Getchell and McGuireWoods

were responsible for the dismissal of the *Grigg* appeal.

Finally, in Paragraph 49, Plaintiff alleges that Regan intentionally communicated the following false statements by innuendo, implication, and insinuation:

   a.   that Regan and AIG had conducted a thorough investigation of all information available to them about the dismissal of the *Grigg* appeal – an investigation which Regan was required to conduct under Virginia Code § 8.01-271.1 prior to filing the [Malpractice] Complaint;

   b.   that the information then available to Regan and to AIG about the dismissal of the *Grigg* appeal demonstrated that Getchell and McGuireWoods were not in any way responsible for causing the *Grigg* appeal to be dismissed; and

   c.   that the information then available to Regan and to AIG demonstrated that Spencer and B&B were entirely responsible for the dismissal of the *Grigg* appeal.

For a variety of different reasons, however, none of these alleged statements can support a plausible defamation claim. For example: the statements contained in the Malpractice Complaint are absolutely privileged and are outside the applicable statute of limitations; the statements alleged in Paragraph 48 are not actionable defamatory statements; and the statements alleged in Paragraph 49 are impermissible extensions of those that Regan is alleged to have actually made. For these and other reasons that will be set forth below, Plaintiff's defamation claims should be dismissed.

## 1. ALTERNATIVE COUNTS OF DEFAMATION

Plaintiff alleges two separate counts of defamation: "malicious defamation" and "negligent defamation." He claims that the two counts are appropriate forms of alternative pleading under Rule 8 of the Federal Rules of Civil Procedure[5] but fails to cite any examples of instances where Virginia courts have permitted two separate counts of defamation based on varying levels of intent.

---

[5] Plaintiff erroneously cites Federal Rule of Civil Procedure 8(e)(2). The Court presumes that Plaintiff intended to cite Rule 8(d), which permits a party to set forth alternative and/or inconsistent claims and defenses. *See* Fed. R.

The requisite level of intent associated with a defamation action varies depending "upon the plaintiff's status as a public or private figure and the damages sought." *Jordan v. Kollman*, 269 Va. 569, 576 (Va. 2005).[6] Plaintiff must show that the Defendants acted with actual malice if he wishes to recover punitive damages, *see id.* at 577 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974)), but he need not make such a showing to recover compensatory damages. *See Gazette, Inc. v. Harris*, 229 Va. 1, 15 (Va. 1985). The fact that Plaintiff is required to prove different levels of intent depending on the damages he seeks, however, does not permit him to create two separate causes of action for defamation. Accordingly, Plaintiff should be limited to one count of defamation, with the requisite intent determining the available remedies.

## 2. Absolute Litigation Privilege

The statements contained in Paragraph 52, which recites verbatim the allegations against Plaintiff that were contained in the Malpractice Complaint, cannot by themselves be a basis for a defamation claim because they are protected by the litigation privilege, which is absolute and cannot be overcome by a showing of malice. *See Lindeman v. Lesnick*, 268 Va. 532, 537 (2004). A defamatory statement made in the course of a judicial proceeding "is absolutely privileged if it is material and relevant to the proceeding." *Donohoe Constr. Co. v. Mount Vernon Associates*, 235 Va. 531, 537 (1988). It "applies to communications made in proceedings pending in a court." *Lindeman*, 268 Va. at 537 (citing *Penick v. Ratcliffe*, 149 Va. 618, 667 (Va. 1927)). The privilege has been applied to a petition in an election contest, a petition to dismiss a criminal

---

Civ. P. 8(d)(2), (3).

[6] Public officials and public figures, as opposed to private individuals, must prove that an allegedly defamatory statement was made with "actual malice." *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 317 (4th Cir. 2008) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964)). None of the Defendants claim that Plaintiff is a public figure or public official. Plaintiff does not meet the test for either because the facts alleged do not indicate that he is a public official with a governmental role or a person who has assumed a role of special prominence in society. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974).

warrant, trial testimony, and an indictment. *Donohoe*, 235 Va. at 537-38 (citations omitted).

The Malpractice Complaint was a communication made in a proceeding pending in a court. It set forth three counts against Plaintiff and B&B: (1) legal malpractice; (2) breach of fiduciary and ethical duty; and (3) breach of contract. All of the factual allegations contained in the Malpractice Complaint were material and relevant to the underlying misconduct of which Plaintiff was accused in the three separate counts. Paragraph 52 of Plaintiff's Complaint is nothing more than a restatement of these statements. Accordingly, all of the allegations contained therein are absolutely privileged.

The fact that Regan allegedly "vouched" for the truth and factual accuracy of the Malpractice Complaint to Davis does not destroy the privilege. Implicit in the filing of almost every complaint is an attorney's guarantee that the claims contained therein have evidentiary support and are warranted by existing law. Fed. R. Civ. P. 11(b). Regan's implicit or explicit certification that the factual allegations contained in the Malpractice Complaint were true cannot transform the absolutely privileged statements into a plausible defamation claim. To hold otherwise would subject attorneys to potential defamation claims for merely filing malpractice complaints on behalf of their clients. Such a result is one that the litigation privilege aims precisely to prevent.

### 3. STATUTE OF LIMITATIONS FOR DEFAMATION

The statements alleged in Paragraph 52 also cannot support a claim for defamation because the applicable limitations period for a defamation claim in Virginia is one year. Va. Code Ann. § 8.01-247.1 (2008) ("Every action for injury resulting from libel, slander, insulting words or defamation shall be brought within one year after the cause of action accrues."). The

Malpractice Complaint was filed on July 18, 2007 and Plaintiff did not initiate the instant action until September 10, 2008 – more than one year later. The statute of limitations therefore prohibits a defamation claim based on the statements alleged in Paragraph 52 of Plaintiff's Complaint.

### 4. FALSITY

While Plaintiff claims that all of the alleged statements by Regan were "false," the statement contained in Paragraph 48(a) cannot support a claim for defamation because the facts set forth in the Complaint show that the statement was actually true. In Virginia, a prima facie case of defamation requires the publication of a *false* and defamatory statement with the requisite intent. *Jordan v. Kollman*, 269 Va. 569, 575 (Va. 2005). Because a defamatory statement must be false to be actionable, truth is an absolute defense to an action for defamation. *See Alexandria Gazette Corp. v. West*, 198 Va. 154, 159 (Va. 1956); *Bills v. Sunshine Wireless Co.*, 824 F. Supp. 60, 64 (E.D. Va. 1993).

In Paragraph 48(a), Plaintiff alleges that Regan told Davis that "Getchell and McGuireWoods were not defendants because AIG did not blame Getchell or McGuireWoods for the dismissal of the *Grigg* appeal, and that AIG blamed only Spencer and B&B for that dismissal." According to Plaintiff's Complaint, it was indeed true that when Regan spoke with Davis on the phone, AIG did not yet blame Getchell or McGuireWoods in the pending malpractice proceeding. Regardless of the Defendants' underlying motives for leaving Getchell's and McGuireWoods' names off the Malpractice Complaint, it is undisputed that AIG was only blaming Spencer and B&B for the purposes of the malpractice action. That is exactly what Regan is alleged to have said. Because a defamatory statement must be false to be actionable and the facts alleged in the Complaint fail to support any plausible conclusion that the statement

10

alleged in Paragraph 48(a) was false, the statement cannot form the basis of Plaintiff's defamation claim.

### 5. DEFAMATION PER SE

In addition to the fact that it is not false, the statement alleged in Paragraph 48(a) cannot support a defamation claim because it is not actionable or defamatory in nature. To be actionable, a statement must be a false assertion of fact that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). Defamatory statements are those that "make the plaintiff appear odious, infamous, or ridiculous," not ones that are "merely offensive or unpleasant." *Id.*; *see also Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 922 (E.D. Va. 2004). A statement that prejudices a person in his profession or trade or imputes to a person an unfitness to perform the duties of employment is defamatory per se at common law. *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713 (Va. 2006) (citations omitted). Additionally, "words and statements which charge an attorney at law with unethical or unprofessional conduct and which tend to injure or disgrace him in his profession are actionable per se." *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 8 (Va. 1954).

None of the statements alleged in Paragraph 48 approach any of these various thresholds for actionable defamatory statements. Taken together, the alleged statements indicate that AIG was blaming Plaintiff and B&B, not Getchell and McGuireWoods, for the dismissal of the *Grigg* appeal because, at the time, there was insufficient information to support a claim that Getchell and McGuireWoods were responsible. This assertion by no means makes Plaintiff appear "odious, infamous, or ridiculous." Nor does it assail his reputation to such a degree to "lower

him in the estimation of the community or to deter third persons from associating or dealing with him." At most, the statements imply that AIG had sufficient information and evidence to support a conclusion that Plaintiff and his former firm were responsible for a mistake. Although a mistake like the one alleged to have been made by Plaintiff can have costly repercussions and form the basis of a malpractice claim, it does not rise to the level of unethical or unprofessional conduct. Barring malice or ill-will, there is nothing necessarily unethical or unprofessional about a mistake by an attorney that prejudices his client. The *intentional* failure to file transcripts associated with an appeal despite a client's directions to do so, for example, might constitute unprofessional conduct. But the simple *mistake* of forgetting to file transcripts associated with an appeal does not. Similarly, the statements alleged in Paragraph 48 do not imply that Plaintiff was unfit to practice law. While an allegation that an attorney "just takes people's money" implies an unfitness to practice law, *see Tronfield*, 272 Va. at 714, the statements alleged in Paragraph 48, which at most attribute responsibility to Plaintiff for a mistake, do not rise to this level. Not every statement that reflects poorly on one's ability to practice law constitutes defamation per se. In *Perk v. Vector Resources Group*, the Virginia Supreme Court held that a law firm's alleged statement that one of its former attorneys failed to inform his clients of certain payments made to him by the client's debtors was not defamatory per se. 253 Va. 310, 316 (Va. 1997). Although such a statement, just like the statements alleged in Paragraph 48, did not reflect positively on the attorney's ability to represent his clients, it did not necessarily imply an unfitness to practice law or constitute an allegation of unethical or unprofessional conduct. Because none of the statements alleged in Paragraph 48 meet the standards for actionable defamatory statements or defamation per se, Paragraph 48 cannot form the basis of Plaintiff's defamation claim.

### 6. OPINION STATEMENTS

Aside from the fact that it is not defamatory in nature, the statement alleged in Paragraph 48(b) is also not actionable because it is a statement of opinion. A statement may be actionable if it is a statement of fact that is false, but not if it is merely an expression of an opinion. *Jordan*, 269 Va. at 576. If a statement is an expression of opinion, then it is constitutionally protected under the First Amendment and judgment should be entered for the defendant. *Potomac Valve & Fitting, Inc. v. Crawford Fitting Company*, 829 F.2d 1280 (4th Cir. 1987). A statement that is relative in nature and depends largely on the speaker's viewpoint is protected. *Fuste v. Riverside Healthcare Ass'n Inc*., 265 Va. 127 (Va. 2003). If a statement cannot be objectively characterized as true or false, then it is not actionable. *Blue Ridge Bank v. Veribanc, Inc*., 866 F.2d 681, 685 (4th Cir. 1989).

In Paragraph 48(b), Plaintiff alleges that Regan told Davis that "Getchell and McGuireWoods were not defendants because, at that time, he and AIG had insufficient information to support a claim that Getchell and McGuireWoods were responsible for the *Grigg* appeal." The *Virginian-Pilot* article also states that Regan said that he might add Getchell and McGuireWoods as defendants in the future after learning more through discovery and the taking of additional depositions. The statement alleged in Paragraph 48(b) is thus nothing more than Regan's subjective assessment of the evidence against Getchell and McGuireWoods as of September 2007. An attorney's opinion as to whether available evidence fits into the criteria for a viable malpractice claim requires the exercise of discretion and individualized judgment. Regan's alleged statement could not have been objectively characterized as true or false at the time, as it depended largely on his own perspective and assessment of the weight of the available evidence. As such, it is a protected expression of opinion and not actionable for the purposes of Plaintiff's defamation claim.

13

### 7. "OF OR CONCERNING" PLAINTIFF

Paragraph 48(b) also cannot support a plausible defamation claim because it was not published "of or concerning" Plaintiff. "[T]he plaintiff satisfies the 'of or concerning' test if he shows that the publication was intended to refer to him and would be so understood by persons reading [or hearing] it who knew him." *WJLA-TV v. Levin*, 264 Va. 140, 152 (Va. 2002). If a publication does not apply to the plaintiff on its face, then it is not actionable unless the allegations and supporting facts connect the defamatory words to the plaintiff. *Id.*

Plaintiff fails to show how Paragraph 48(b), which refers only to Getchell and McGuireWoods, was intended to refer to him or would be so understood by persons reading it who knew him. On its face, the alleged statement was intended to refer to Getchell and McGuireWoods – not Plaintiff. Further, the allegations and supporting facts in the Complaint do not connect the alleged statement to Plaintiff. The fact that Getchell and McGuireWoods were not yet named defendants because AIG had insufficient information to support a claim against them has no bearing on Plaintiff's responsibility for the dismissal of the *Grigg* appeal. The alleged statement relates to Regan's assessment of the then-available evidence against Getchell and McGuireWoods concerning any potential malpractice claims and is therefore separate from and independent of Plaintiff's alleged actions. Because the statement alleged in Paragraph 48(b) fails to satisfy the "of or concerning" test, it cannot support Plaintiff's defamation claim.

### 8. INNUENDO

In Paragraph 49, Plaintiff alleges that Regan intentionally communicated to several false and defamatory statements by innuendo, implication, and insinuation. While a defamatory statement can be made in such a fashion, *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 592 (Va. 1954), none of the statements alleged in Paragraph 49 can support a viable claim of

defamation. Although every fair inference from the pleadings must be drawn in the plaintiff's

favor when determining whether statements are reasonably capable of the meaning attributed to

them by implication, "the meaning of the alleged defamatory language cannot, by innuendo, be

extended beyond its ordinary and common acceptation." *Id*. Innuendo "cannot introduce new

matter, nor extend the meaning of the words used, or make that certain which is in fact

uncertain." *Id*. The innuendo alleged in Paragraph 49 is an impermissible extension of Regan's

actual alleged statements and is not supported by the facts alleged in the Complaint or the

*Virginian-Pilot* article.[7]

In Paragraph 49(a) of the Complaint, Plaintiff alleges that Regan intentionally

communicated, by implication, "that [he] and AIG had conducted a thorough investigation of all

information available to them about the dismissal of the *Grigg* appeal – an investigation which

[he] was required to conduct under Virginia Code § 8.01-271.1 prior to filing the [Malpractice]

Complaint." As an initial matter, this statement does meet the "of or concerning" test described

above because it neither applies to Plaintiff on its face nor intends to refer to Plaintiff. A

statement implying that Regan and AIG conducted a thorough investigation of the dismissal of

the *Grigg* appeal does not necessarily imply anything about Plaintiff or his involvement in the

appeal and is not a statement that is defamatory in nature. Furthermore, the statement

impermissibly extends the meaning of the *actual* statements alleged to have been made by Regan

in Paragraph 48 and the statement attributed to Regan in Davis's *Virginian-Pilot* article. In

---

[7] Although as a general rule extrinsic evidence is not considered at the 12(b)(6) stage, when a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Because Plaintiff attached Davis's actual article to the Complaint, it is proper for the Court to consider the article in determining whether the statements alleged in Paragraph 49 are impermissible inferences taken from Regan's actual words.

Paragraph 48(b), Plaintiff alleges that Regan stated that Getchell and McGuireWoods were not defendants because, *at that time*, Regan and AIG lacked sufficient information to support a malpractice claim against them. It does not imply or insinuate that Regan and AIG conducted a thorough investigation of all available information on the matter, as Paragraph 49(a) alleges. Davis's article, in which Regan stated that Getchell and McGuireWoods might be added as defendants as discovery progressed, also supports a conclusion that the investigation into the *Grigg* error was ongoing and not yet complete. Paragraph 48(b) and the Davis article thus both belie the statement alleged to have been made by innuendo in Paragraph 49(a). Furthermore, Virginia Code § 8.01-271.1 only required that Regan certify that the claims asserted in the Malpractice Complaint against Plaintiff and B&B were well-grounded in fact, warranted by existing law, and not interposed for any improper purpose. Va. Code Ann. § 8.01-271.1 (2008). Nothing required Regan to investigate McGuireWoods' or Getchell's conduct, as the Malpractice Complaint was lodged only against Spencer and B&B. The statement alleged in Paragraph 49(a) extends the alleged defamatory language of Plaintiff's Complaint beyond its normal meaning and acceptation, fails to satisfy the "of or concerning" test, and is not defamatory in nature. As such, it cannot support a claim for defamation.

Paragraph 49(b) cannot support Plaintiff's defamation claim for precisely the same reasons. In Paragraph 49(b), Plaintiff alleges that Regan intentionally communicated, by implication, "that the information then available to [him] and to AIG about the dismissal of the *Grigg* appeal demonstrated that Getchell and McGuireWoods were not in any way responsible for causing the *Grigg* appeal to be dismissed." Like the statement alleged in Paragraph 49(a), this statement fails the "of or concerning" test because it neither applies to Plaintiff nor intends to refer to Plaintiff. Because the fact that Getchell and McGuireWoods were not responsible for

16

the dismissal of the *Grigg* appeal does not necessarily imply that Plaintiff and B&B were responsible, an ordinary reader of Paragraph 49(b) would not necessarily take the statement to refer to Plaintiff. As such, Paragraph 49(b) is not actionable. Regardless, the alleged innuendo cannot reasonably be drawn from the statements in Paragraph 48 and the *Virginian-Pilot* article. Paragraph 48 alleges that Regan said that Getchell and McGuireWoods were not named as defendants on the Malpractice Complaint because, at that time, he had insufficient information to support a viable malpractice claim – not that Getchell and McGuireWoods were not in any way responsible or exonerated from any wrongdoing. The fact that Regan lacked the requisite amount of evidence to bring a malpractice claim against Getchell and McGuireWoods when he spoke with Davis does not imply that the two were not in any way responsible for the dismissal of the *Grigg* appeal.[8] Furthermore, if, as stated in the *Virginian-Pilot*, Regan held out the possibility that he might later add Getchell and McGuireWoods to the Malpractice Complaint as discovery progressed, one could not reasonably infer that the two were not in any way responsible for the dismissal of the *Grigg* appeal. For all of these reasons, the statement alleged in Paragraph 49(b) is an impermissible extension of allegedly defamatory language and therefore cannot form the basis of a plausible defamation claim.

Finally, while Paragraph 49(c) meets the "of or concerning" test, it is not actionable because it impermissibly extends the allegedly defamatory statements by Regan in Paragraph 48 beyond their normal and common acceptation. In Paragraph 49(c), Plaintiff alleges that Regan communicated by innuendo "that the information then available to [him] and to AIG demonstrated that [Plaintiff] and B&B were entirely responsible for the dismissal of the *Grigg*

---

[8] The fact that McGuireWoods was later added as a defendant in the malpractice proceeding is further proof that the statement alleged in Paragraph 49(b) impermissibly and unreasonably extends by innuendo the statements

17

appeal." The statements alleged in Paragraph 48, however, imply that the information available to Regan *at the time* indicated that AIG had a malpractice claim against Plaintiff, and not Getchell or McGuireWoods. The fact that Regan and AIG did not yet have enough information or evidence to support a claim against Getchell and McGuireWoods at the time does not necessarily mean that the two were not responsible or that Plaintiff was entirely responsible. As indicated in Davis's article, Regan and AIG held out the possibility of later adding Getchell and McGuireWoods as defendants once more information became available through discovery and the taking of depositions. A reasonable reader of such a statement would infer that Regan lacked sufficient evidence at that time to support a viable malpractice claim against Getchell and McGuireWoods – not that Plaintiff and B&B were entirely responsible for the dismissal of the appeal. Aside from these reasons, the statement alleged in Paragraph 49(c) is also not actionable because it is not defamatory in nature. As explained at length above, a statement placing the blame on an attorney for a mistake in filing required trial transcripts in an appeal does not make him appear "odious, infamous, or ridiculous" or otherwise meet the standards for defamation per se. As such, the statement alleged in Paragraph 49(c) cannot support a viable claim for defamation.

## 9. CONCLUSION

Each of the allegedly defamatory statements suffers from a variety of fundamental barriers that prevent Plaintiff's claim from surviving the Defendants' Motions to Dismiss. The allegations of the Malpractice Complaint, which are recited at length in Paragraph 52 of Plaintiff's Complaint, are protected by the absolute litigation privilege as material and relevant statements concerning the malpractice proceeding against Plaintiff. The statements also cannot

---

allegedly made by Regan in Paragraph 48 and in the *Virginian-Pilot* article.

form the basis of a defamation claim because Plaintiff's Complaint was not filed within the requisite one year of when the statements were first published. Paragraph 48(a) is not actionable because it is neither false nor defamatory in nature. Paragraph 48(b) cannot support a defamation claim because it is not defamatory in nature, not "of or concerning" Plaintiff, and is a protected statement of opinion. Finally, the innuendo contained in Paragraph 49 is not actionable because, among other reasons, it impermissibly extends the statements actually alleged to have been uttered by Regan beyond their normal and common acceptations. None of the statements alleged by Plaintiff are actionable for the purposes of a defamation claim. While there has been much debate among the parties concerning the applicability of a qualified privilege to Regan's statements and liability of AIG and Maddiona for the alleged acts and statements of Regan in this case, the Court finds it unnecessary to address these issues because Plaintiff entirely fails to state a claim for defamation on substantive grounds. For all of these reasons, Counts I and IV of Plaintiff's Complaint should be dismissed.

## B. ABUSE OF PROCESS

In Count II, Plaintiff alleges that the Defendants abused process by filing the Malpractice Complaint in order to lay the blame for the dismissal of the *Grigg* appeal on him, cover up Getchell's wrongdoing, and protect the reputation of McGuireWoods. The elements of a prima facie case for abuse of process include: (i) the existence of an ulterior motive, and (ii) an act in the use of process not proper in the regular prosecution of the proceedings. *Triangle Auto Auction*, 238 Va. 183, 186 (Va. 1989). Plaintiff fails to state an abuse of process claim because he fails to allege any improper act in the prosecution of the Malpractice Complaint on the part of the Defendants.

"A legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process." *Donohoe Construction Co., Inc. v. Mount Vernon Assoc.*, 235 Va. 531, 540 (Va. 1988). Therefore, the mere fact that Regan and AIG allegedly filed the Malpractice Complaint as part of a broader scheme to lay the blame for the dismissal of the *Grigg* appeal on Plaintiff even when it was Getchell's fault, without more, does not constitute an abuse of process. Using process as a means of extortion or as "a whip to force the payment of an alleged indebtedness" is an abuse of process, but merely filing a complaint with malicious intentions, as Plaintiff alleges AIG and Regan did, is not. *Id*. Plaintiff attempts to cure this fundamental problem with his claim by repeatedly averring that the Defendants used the Malpractice Complaint as "a whip and a club" to harm him and cover up Getchell's and McGuireWoods' wrongdoing. *See* Pl. Mem. in Opp. to Mot. Dismiss by AIG Subsidiaries, at 23. But such accusations are conclusory and insufficient to support a viable allegation of "an act in the use of process not proper in the regular prosecution of the proceedings." *See Triangle*, 238 Va. at 186. The facts alleged by Plaintiff, for example, do not show that any of the Defendants held out the Malpractice Complaint as a means of extorting something from him or securing the payment of an alleged debt. *See Donohoe*, 235 Va. at 540.

A legion of analogous cases demonstrates that nothing alleged by Plaintiff constituted an improper act in the regular prosecution of the malpractice proceedings by the Defendants. The fact that the Malpractice Complaint may have been filed against Plaintiff without any basis in fact, by itself, is insufficient to support an abuse of process claim. *See 7600 Ltd. P'ship v. Questech, Inc.*, 39 Va. Cir. 268, 271 (1996) (holding that initiating a baseless suit may warrant sanctions but cannot constitute an abuse of process) (citing *Donohoe*, 235 Va. at 540). The fact that the Malpractice Complaint may have been filed against Plaintiff to embarrass or injure him

20

is also insufficient to support an abuse of process claim. *See Prousalis v. Jamgochian,* 38 Fed. Appx. 903, 905 (4th Cir. 2002). The same goes for the fact that Regan may have refused to allow Plaintiff access to documents in McGuireWoods' *Grigg* file dated after April 19, 2005 on the basis of attorney-client privilege. *Montgomery v. McDaniel*, 271 Va. 465, 470-71 (Va. 2006) (stating that the withholding of documents, although sanctionable, "does not establish liability in an action for abuse of process.") Even the fact that the Defendants named Plaintiff as a party to the Malpractice Complaint while holding out the possibility of later removing him from it does not constitute an abuse of process. *See 7600 Ltd. P'ship v. Questech, Inc.*, 39 Va. Cir. 268, 271 (1996) (adding a party to a complaint and then seeking to vacate the addition is not an abuse of process). In fact, the Defendants' choice to add Plaintiff and B&B as defendants in the malpractice proceeding while holding out the possibility of adding Getchell and McGuireWoods as more information became available was a perfectly acceptable litigation strategy – not an abuse of process.

Furthermore, any actions allegedly taken by any of the Defendants *before* the Malpractice Complaint was filed – such as Maddiona's alleged phone call to Spencer in early 2006, AIG's and the AIG subsidiaries' decision to direct Regan to file the Malpractice Complaint, or the institution of early settlement negotiations – cannot support a claim for abuse of process. Abuse of process is "the wrongful *use* of process *after* it has been issued." *Triangle*, 238 Va. at 184 (emphasis in original). Because the aforementioned actions took place before the Malpractice Complaint was issued, they cannot form the basis of a viable abuse of process claim.

Finally, it is worth noting that *Fitzgerald v. Farrell*, 63 Va. Cir. 1 (Loudon County, Va. 2003), a case heavily relied on by Plaintiff in the briefs, also supports dismissal of this claim. In *Fitzgerald*, a police officer who also owned a construction company claimed that three

21

individuals conspired to have him indicted for fraud and embezzlement after disputes arose concerning the work he did for them. When the criminal indictment against him for those offenses was later dismissed, the officer sued those three individuals for numerous torts, including abuse of process. *Id.* at 3. The court sustained the defendants' demurrer for abuse of process because the officer failed to "allege that anything occurred during the criminal prosecution that abused or perverted the process." *Id.*[9] Similarly, because Plaintiff fails to allege any improper act that abused or perverted the regular prosecution of the Malpractice Complaint, Count II of Plaintiff's Complaint should be dismissed.

### C. CONSPIRACY TO INJURE BUSINESS

Finally, Plaintiff alleges that the Defendants conspired to injure him in his "reputation, trade, business or profession" in violation of Va. Code § 18.2-499.[10] To recover under the statute, a plaintiff must prove: "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business, and (2) resulting damage to plaintiff." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449 (1984). Plaintiff fails to state a claim under § 18.2-499 because the statute does not provide relief for the injury he complains of and also because he fails to allege any unlawful act or purpose in furtherance of the alleged conspiracy.

A right of action is afforded under § 18.2-499 "only when malicious conduct is directed at one's business, not one's person." *Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985). Injury to personal reputation and interest in employment are clearly excluded from the scope of

---

[9] Plaintiff analogizes the facts of *Fitzgerald* to those of this case but fails to recognize that the *Fitzgerald* court held that the plaintiff did not have a claim for abuse of process in that case. *See* Pl. Mem. in Opp to Mot. Dismiss by AIG Subsidiaries, at 24. While the court did recognize the plaintiff's claim for malicious prosecution, abuse of process is a wholly separate tort. 63 Va. Cir. at 3.

[10] Va. Code § 18.2-499 makes it a Class 1 misdemeanor to conspire to "willfully and maliciously injur[e] another in his reputation, trade, business or profession by any means whatever," and Va. Code § 18.2-500 provides civil relief for parties who fall victim to such conduct. Va. Code. Ann. § 18.2-499, -500 (2008).

the statute's coverage. *Andrews v. Ring*, 266 Va. 311, 319 (Va. 2003). The facts set forth in the

Complaint indicate that any alleged conspiracy to cast the blame for dismissal of the *Grigg*

appeal was directed at Plaintiff, not his business. While Plaintiff's future employment prospects

and his ability to retain clients may have been affected as a result of the acts of the alleged

conspirators, § 18.2-499 does not provide relief for such injuries. *See, e.g., Mansfield v.*

*Anesthesia Assocs.*, 2008 U.S. Dist. LEXIS 34732, 10-11 (E.D. Va. Apr. 28, 2008) (dismissing

claim under § 18.2-499 and -500 where anesthesiologist's alleged injuries were the termination

of his employment with his practice group and the potential difficulty he would face in obtaining

future employment with another practice group). Furthermore, this Court has previously rejected

an argument similar to Plaintiff's contention that because of the nature of his profession, any

injury to his personal reputation is also necessarily an injury to his business. *See Moore v. Allied*

*Chem. Corp.*, 480 F. Supp. 364, 375 (E.D. Va. 1979). Since injury to personal reputation

ordinarily causes damage to one's business or profession, allowing Plaintiff's claim to go

forward at this stage would permit nearly every defamation action to fall within the scope of §

18.2-499's coverage. *See id.* at n. 3. The injury alleged in Count III is solely to Plaintiff's

personal reputation and interest in employment, not Plaintiff's business. For this reason, Plaintiff

fails to state a claim under § 18.2-499.

Plaintiff's claim also fails because his Complaint fails to allege any unlawful act or

purpose on the part of the Defendants. "There can be no conspiracy to do an act which the law

allows." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (1985). To survive

a motion to dismiss, "an allegation of conspiracy, whether criminal or civil, must at least allege

an unlawful act or an unlawful purpose." *Id.* As set forth above, Plaintiff fails to plead facts

sufficient to support a plausible claim of defamation or abuse of process. While the allegations of

wrongdoing in the Complaint may lead one to conclude that the Defendants acted improperly, none of the facts alleged can support a conclusion that the Defendants acted unlawfully or with any unlawful purpose. Thus, because the conspiracy statute provides no protection for the type of injury alleged by Plaintiff and because Plaintiff fails to allege any illegal acts in furtherance of the alleged conspiracy, Count III of the Complaint should be dismissed.

## IV. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' Motion to Dismiss all counts of Plaintiff's Complaint. An appropriate Order will follow. The Clerk of Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to Plaintiff.

Entered this _____ day of January, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE